Jerry P. McNEIL, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 06–747 C.

United States Court of Federal Claims.

Aug. 9, 2007.

Jerry P. McNeil, Owasso, OK, pro se.

Steven M. Mager, United States Department of Justice, Washington, DC, for defendant.

## OPINION

SWEENEY, Judge.

"Bad things happen if you fail to pay federal income taxes when due." *Hinck v. United States,* — U.S. —, —, 127 S.Ct. 2011, 2013, 167 L.Ed.2d 888 (2007). Such is the situation here. Plaintiff, as a federal

government retiree, receives annuity payments from the Civil Service Retirement and Disability Fund ("retirement fund"). As a result of plaintiff's failure and refusal to pay income tax on his retirement annuity payments, the United States Internal Revenue Service ("IRS") assessed plaintiff's unpaid taxes, calculated the penalties and interest due as a result of the nonpayment, and then levied those same annuity payments. The Office of Personnel Management ("OPM") executed the IRS levy. Plaintiff objects to the assessment of income tax on his retirement annuity, objects to the IRS levy, and objects to the execution of the levy by the OPM.

Presently·before the court are the following motions: plaintiff's Motion for Judicial Notice of Prior Admissions by Defendant ("motion for judicial notice"); Defendant's Motion to Dismiss; Plaintiff's Motion for Judicial Notice ("second motion for judicial notice"); Plaintiff's Motion to Strike; plaintiff's Motion for Summary Judgment; and Plaintiff's Emergency Motion for Judicial Intervention ("emergency motion"). As explained in full detail below, the court grants defendant's motion to dismiss, denies plaintiff's motion to strike, and denies plaintiff's remaining motions as moot.

## I. BACKGROUND[1]

### A. Factual History

Plaintiff Jerry P. McNeil worked for the federal government for more than thirty-eight years as an engineer, Compl. ¶ 56, and

retired under the Civil Service Retirement System ("CSRS")[2] on February 2, 1987, Def.'s App. 25. Plaintiff receives retirement benefits from the United States in the form of payments from his Civil Service Annuity. Compl. Ex. 1 at 2, 4. The OPM makes payment to plaintiff. Compl. ¶ 46; Compl. Ex. 1 at 4. It appears that prior to October 2006, plaintiff's gross monthly annuity payment was $5,068.00, and net monthly annuity payment was approximately $4,528.05. Compl. Ex. 1 at 4.

Plaintiff presently lives in Owasso, Oklahoma. Compl. Ex. *passim*. Plaintiff claims that he is "domiciled on non-federal land in the Cherokee Outlet (Indian Nation territory within the boundaries of Oklahoma)." Compl. ¶ 4. Plaintiff also contends that he is "a U.S. National, but not a citizen of the United States ... and denies any nexus to the United States whatsoever." *Id.* ¶ 9; *see also id.* ¶ 45. Conversely, in a sworn affidavit dated August 15, 2005, plaintiff indicates that he was "born in an American state" and is "a Citizen of the United States." Compl. Ex. 8 at 64, 77.

In September 2004, the IRS served a Notice of Levy to collect unpaid civil penalties for tax years 1999–2001 on plaintiff's account at the Tulsa Federal Employees Credit Union ("credit union") in Tulsa, Oklahoma. Compl. ¶ 49(2); Compl. Ex. 7 at 56–57; Def.'s App. 23. On October 14, 2004, the credit union paid the IRS $1,553.91 from plaintiff's account. Compl. ¶ 49(2); Compl. Ex. 7 at 56–57. Plaintiff subsequently filed a lawsuit against the credit union in Oklahoma

---

1. The facts are derived from plaintiff's complaint ("Compl."); the exhibits attached to the complaint ("Compl.Ex."); plaintiff's emergency motion ("Emergency Mot."); the exhibit attached to the emergency motion ("Emergency Mot. Ex."); Plaintiff's Motion for Leave to Enter Supplemental Pleadings and Evidence in a Matter Before the Court ("motion to supplement" or "Mot. Supplement"); plaintiff's motion for judicial notice ("Mot. Judicial Notice"); the appendix attached to Defendant's Motion to Dismiss ("Def.'s App."); and the dockets and unreported or unpublished decisions from federal and state courts in cases to which plaintiff was a party. Further, in the complaint, plaintiff labeled two sets of paragraphs with the numbers 49–52. The court will add "(2)" to the paragraph number when citing the second set of paragraphs.

2. The CSRS was first established in 1920 by a law commonly referred to as the Civil Service Retirement Act, Pub.L. No. 66–215, 41 Stat. 614 (1920). In its current form, the Civil Service Retirement Act is codified as chapter 83 of title 5 of the United States Code. *See* Act of Sept. 6, 1966, Pub.L. No. 89–554, 80 Stat. 378 (enacting title 5 of the United States Code). In 1986, Congress enacted a new retirement system for federal employees-the Federal Employees' Retirement System ("FERS"). *See* Federal Employees' Retirement System Act of 1986, Pub.L. No. 99–335, 100 Stat. 514 (codified as amended at 5 U.S.C. ch. 84). Although plaintiff did not retire under the FERS, he does cite some of its provisions in support of his arguments, which are addressed herein.

state district court.[3] Compl. ¶ 50(2); Compl. Ex. 8 at 65. The credit union prevailed on its motion for summary judgment and the court ordered plaintiff to pay the credit union's attorney's fees as a sanction. Compl. ¶ 50(2); Compl. Ex. 8 at 73. The Supreme Court of Oklahoma denied plaintiff's petition for a writ of habeas corpus. Compl. ¶ 50(2).

Approximately fifteen days after the Oklahoma state district court entered judgment, the IRS served another Notice of Levy on plaintiff's account on the credit union. Id. On September 6, 2005, the credit union again paid the IRS, from plaintiff's account, civil penalties for tax years 1999 through 2001 in the amount of $798.40. Id.; Compl. Ex. 7 at 59.

The following month, October 2005, plaintiff filed a lawsuit against the IRS and the Secretary of the United States Department of the Treasury ("Department of the Treasury") in the United States District Court for the Northern District of Oklahoma ("Oklahoma district court"). In that lawsuit, plaintiff challenged, among other things, the IRS's levy against his credit union account. McNeil v. Doe, No. 05–CV–0579, 2006 WL 2054082, at *1 (N.D.Okla. July 21, 2006). On July 21, 2006, the Oklahoma district court dismissed plaintiff's complaint for lack of subject matter jurisdiction. Id. at *2–3; Compl. ¶ 52(2). The Oklahoma district court informed plaintiff that "he may pursue the appropriate administrative relief to redress his alleged grievances regarding taxes assessed against him." McNeil, 2006 WL 2054082, at *2.

Next, on July 8, 2006, the IRS served a Notice of Levy on the OPM against plaintiff's retirement annuity to collect plaintiff's unpaid taxes and penalties. Compl. Ex. 1 at 3. The notice indicated that plaintiff owed $14,600.56 in unpaid taxes for tax year 2002 and $10,541.60 in unpaid taxes for tax year 2003. Id. The notice also indicated that plaintiff owed civil penalties for tax years 1999 through 2003, in the amounts of $546.41, $577.15, $546.41, $557.30, and $557.30, respectively. Id. The total amount of the levy was $27,926.73. Id. In a July 24, 2006 letter, the OPM informed plaintiff that it had received the Notice of Levy and requested that plaintiff, within fifteen days, verify for the OPM the amount of his income that was exempt from the levy. Def.'s App. 2.

Plaintiff responded to the OPM by letter dated August 1, 2006, challenging both the levy and the OPM's authority to execute the levy. Id. at 3–10. Plaintiff apparently also included with his letter a copy of IRS Form 4852, "Substitute for Form W–2, Wage and Tax Statement, or Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit–Sharing Plans, IRAs, Insurance Contracts, Etc.," on which plaintiff indicated "zero" wages and "zero" distributions from pensions, annuities, or retirement plans. Id. at 11. The OPM responded to plaintiff's objections by letter dated August 3, 2006, explaining that it was "required by law to honor a notice of a government claim debt issued by the [IRS]," and citing the applicable federal regulation.[4] Id. at 12. The OPM's letter also informed plaintiff that he must direct any inquiry about the levy itself to the IRS. Id. Plaintiff further objected to the levy and the OPM's execution of the levy via a letter to the OPM dated August 9, 2006.[5] Id. at 13–14. The OPM again responded to plaintiff, by letter from the OPM's Office of the General Counsel dated August 24, 2006, indicating that the IRS was authorized to levy plaintiff's retirement annuity and that the OPM had the legal authority

---

**3.** Plaintiff contends that he "named and served" the IRS. Compl. ¶¶ 38, 50, 54; see also Mot. Judicial Notice ¶ 1. However, the docket for the case, available online at http://www.oscn.net/applications/oscn/casesearch.asp, contains no indication that the IRS was in any way part of the lawsuit. See Docket of McNeil v. Tulsa Fed. Employees Credit Union, No. CJ–2004–630 (filed Nov. 19, 2004). In any event, plaintiff cannot sue the IRS in state court.

**4.** In the letter, the OPM cites "Code of Federal Regulations, Part 845, Subpart R[,] 831.1801— Agency Requests to OPM for Recovery of a Debt from the Civil Service Retirement and Disability Fund." However, section 831.1801 is actually located in title 5, chapter 1, part 831, subpart R of the Code of Federal Regulations ("CFR").

**5.** Plaintiff dated the letter "August 9, 2005," but it is clear that the letter was sent and received in 2006.

to execute the levy.[6] *Id.* at 16–17. Plaintiff again responded to the OPM, by letter dated August 26, 2006, objecting to the levy. *Id.* at 18–19.

Finally, in a September 7, 2006 letter, the OPM informed plaintiff that, pursuant to the July 8, 2006 Notice of Levy: "We have taken action to withhold 07 installments of $3,740.55 followed by a final installment of $1,742.88. This deduction will begin with your annuity payment dated 10-01-2006." Compl. Ex. 1 at 2. Further, the OPM instructed plaintiff regarding how to challenge the levy:

> Each levy served upon the Office of Personnel Management (OPM) contains specific instructions concerning the procedures available to the taxpayer for challenging the levy. You must follow the procedures set out in the instructions to pay the levy, *YOU MUST CONTACT THE IRS AGENT* whose name and phone number appears in the upper right hand corner of the levy. OPM acts only as a collection agent in these matters, we do not have the discretion to review the determination that you owe the debt or the amount that is owed. Even the determination of the installment is specified by the instructions in the levy and accompanying documentation. *IF YOU WISH TO DISCUSS ANY OF THESE ISSUES, YOU MUST DIRECT YOUR INQUIRY TO THE INTERNAL REVENUE SERVICE.*

*Id.*

While the OPM was withholding unpaid taxes and civil penalties from plaintiff's annu-ity payments on behalf of the IRS, the IRS served another Notice of Levy on the credit union. Emergency Mot. ¶ 1. The February 22, 2007 Notice of Levy identified unpaid taxes for tax year 2003 and civil penalties for tax years 1999 through 2003. Emergency Mot. Ex.

## B. Procedural History

Plaintiff filed his *pro se* complaint in this court on November 2, 2006. Pro se complaints, "'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Although the court will adhere to its typical practice of broadly construing *pro se* complaints, the court must note, at the outset, that this particular complaint was meandering and convoluted, and oftentimes illogical and contradictory. Rule 8(a) of the Rules of the United States Court of Federal Claims ("RCFC") only requires complaints to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for judgment for the relief the pleader seeks."

That said, a broad reading of the complaint in this case reveals that plaintiff objects to the IRS's assessment of income tax on his retirement annuity, the IRS's levy of his annuity, and the OPM's execution of the IRS levy. *See* Compl. ¶¶ 15, 25. All of plaintiff's objections are premised on his belief that his retirement annuity is property,

---

**6.** The court questions the applicability of the statutes cited in the OPM's letter in view of plaintiff's situation. The letter begins by acknowledging plaintiff's reliance on 5 U.S.C. §§ 8467(a)(1)-(2) in support of his argument, Def.'s App. 16, and explains that 5 U.S.C. § 8470 permits levies where "another Federal law provides specific authority to do so. . . ." *Id.* However, sections 8467 and 8470 apply to FERS payments and not to payments pursuant to the CSRS. Further, the letter references "26 U.S.C. § 8470," a nonexistent section of the United States Code, for the proposition that the IRS can "recover amounts owed including the costs of collection of debt by placing a levy on 'the accrued salary or wages of any . . . employee . . . of the United States . . .'" *Id.* (presumably citing 26 U.S.C. § 6331(a) (2000 & Supp. IV 2005)). Then, citing 26 U.S.C. § 3401, the letter indicates that "the term 'wages' is defined in the IRS code as including '. . . all renumeration . . . for services performed by an employee for his employer, including the cash value of all renumeration (including benefits) . . .'" *Id.* at 16–17. Although "civil service retirement benefits are deferred compensation for past years of service rendered to the Government," *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 808, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), the portion of 26 U.S.C. § 6331(a) cited in the letter appears to apply only to current federal employees, not retirees such as plaintiff. The relevance of the above-cited statutes is moot, however, given the court's ruling on jurisdiction.

and not income subject to taxation. *See id.* ¶¶ A, 48(2), 54–57, 65. Specifically, the court discerns the following claims raised by plaintiff's complaint: (1) a violation of the Administrative Procedure Act ("APA"); (2) a violation of the Contract Clause of the United States Constitution ("Contract Clause"); (3) a refund of taxes withheld from his annuity payments; (4) violations of various statutes and regulations concerning the government's authority to impose and execute the levy; (5) a violation of the Debt Collection Improvement Act of 1996 ("DCIA"); (6) the failure of the IRS to provide him with an assessment of his taxes due; (7) a breach of contract; (8) a breach of fiduciary duty resulting in a "wrongful" conversion of his retirement annuity; (9) a taking under the Fifth Amendment of the United States Constitution ("Fifth Amendment"); (10) a violation of the Freedom of Information Act ("FOIA"); (11) a request for declaratory and injunctive relief; and (12) an award of legal costs. Plaintiff also requests a jury trial.[7]

Plaintiff next filed a motion for judicial notice on December 26, 2006. In his motion for judicial notice, plaintiff described purported prior admissions by defendant and requested that the court take judicial notice of those admissions pursuant to Rule 201(d) of the Federal Rules of Evidence ("FRE"). Mot. Judicial Notice 1–4. Soon thereafter, on January 18, 2007, plaintiff filed a Motion for Peremptory Writ of Mandamus, which the court denied on February 22, 2007.

Defendant filed its motion to dismiss on February 7, 2007, seeking the dismissal of plaintiff's complaint for lack of subject matter jurisdiction. Defendant's Motion to Dismiss ("Mot.Dismiss") 1. Plaintiff filed an Interim Reply to Defendant's Motion to Dismiss and Cross Complaint ("interim reply") on February 22, 2007.[8] Then, on March 7, 2007, plaintiff filed Plaintiff's Reply to Defendant's Motion to Dismiss. Plaintiff's March 7, 2007 submission also included Plaintiff's Offer of Proof, the second motion for judicial notice, Plaintiff's Motion to Strike, and a Motion for Summary Judgment (collectively cited as "Pl.'s Resp.").

Subsequently, on March 9, 2007, plaintiff filed his emergency motion, which expressed plaintiff's concern that the IRS was attempting to recover unpaid taxes from the credit union that were already being withheld from his annuity payments. Emergency Mot. ¶¶ 1–3. In addition, plaintiff feared that the IRS would attempt to levy his retirement annuity for the same unpaid taxes and civil penalties that had already been withheld from his annuity payments. *Id.* ¶ 5. Thus, plaintiff requested that the court take action barring the OPM "from acting further on IRS claims made upon future annuity payments . . . without written consent from this Court." *Id.* ¶ 6. On March 26, 2007, defendant filed Defendant's Response to Plaintiff's "Emergency Motion for Judicial Intervention" and Motion to Stay Proceedings ("Def.'s Resp."). Defendant argued that the court lacked jurisdiction to award the relief sought by plaintiff, Def.'s Resp. 1–3, and requested that the court stay any further proceedings

---

7. The court is without authority to grant plaintiff's request for a jury trial. "It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

8. Plaintiff's interim reply asserted that defendant's motion to dismiss "contains a counterclaim" and was an unauthorized "answer and cross complaint." Interim Reply ¶ 1. Plaintiff is incorrect. RCFC 7 provides: "There shall be a complaint and an answer; if the answer contains a counterclaim . . ., there shall be a reply thereto." However, RCFC 12(b) permits a party to assert the defense of lack of subject matter jurisdiction before filing a responsive pleading by way of a separate motion. In other words, de-

fendant may file a motion to dismiss prior to filing an answer. Further, pursuant to RCFC 13, counterclaims are asserted in the answer, which defendant has not yet filed in this case. Finally, a cross-claim, as defined in the Federal Rules of Civil Procedure, is a "claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein. . . ." Fed.R.Civ.P. 13(g). However, because the United States is the only defendant allowed in the United States Court of Federal Claims ("Court of Federal Claims"), Federal Rule of Civil Procedure 13(g) was not adopted in the RCFC. In sum, defendant's motion to dismiss is merely a motion to dismiss, and not an answer, counterclaim, or cross-complaint.

in this case until it ruled on defendant's motion to dismiss, *id.* 3–4.

On April 9, 2007, plaintiff filed a motion to supplement. Plaintiff indicated that the IRS had served a "duplicate levy upon the payer of the annuity," the Financial Management Service ("FMS") of the Department of the Treasury. Mot. Supplement ¶¶ 2–3. Plaintiff attached a statement from the FMS to the motion to supplement, which indicated that FMS had withheld $142.24 from plaintiff's total payment of $948.31 on April 2, 2007.

The court convened a status conference on April 11, 2007, to discuss plaintiff's emergency motion, plaintiff's motion to supplement, and defendant's motion to stay. The court also hoped to facilitate discussions between plaintiff and the IRS due to its concern about the potential detrimental effects of the continuing IRS levy. In an April 19, 2007 order, the court allowed plaintiff's supplemental pleadings of April 9, 2007, and granted defendant's motion to stay pending the court's ruling on the motion to dismiss. The court deems oral argument unnecessary.

## II. PRELIMINARY MATTERS

Before the court turns to the merits of the pending motions, it will address some of the general contentions made by plaintiff that serve as the bases for some of his arguments.

### A. Plaintiff's Residency and Citizenship Subject Him to the Laws of the United States

Plaintiff advances several incongruous arguments to support his claim that he is not subject to the jurisdiction of the United States.[9] First, plaintiff claims that he is outside of the legal jurisdiction of the United States because he is not a resident of the United States, but rather is "domiciled on non-federal land in the Cherokee Outlet (Indian Nation territory within the boundaries of Oklahoma)." Compl. ¶ 4. However, when

the State of Oklahoma was admitted to the Union in November 1907, both the Oklahoma Territory and Indian Territory ceased to exist. *See* Act of June 16, 1906, ch. 3335, 34 Stat. 267, 267 (permitting the inhabitants of Oklahoma Territory and Indian Territory to adopt a constitution and become the State of Oklahoma); Proclamation of November 16, 1907, 35 Stat. 2160, 2160–61 (establishing the State of Oklahoma). As noted above, plaintiff presently lives in Owasso, Oklahoma. Compl. Ex. *passim.* Owasso is a northern suburb of Tulsa, Oklahoma, and plaintiff makes no allegations that Owasso is part of any federally-protected tribal land. Thus, plaintiff is a resident of the State of Oklahoma. And, because the State of Oklahoma is one of the fifty United States, plaintiff is also a resident of the United States. *See* Okla. Const. art. I, § 1 ("The State of Oklahoma is an inseparable part of the Federal Union . . . .").

Plaintiff also argues that the State of Oklahoma is "outside the legislative jurisdiction of the United States." Compl. ¶ 4; *see also id.* ¶ 45 (claiming that "the United States has no legislative jurisdiction within Oklahoma"). Although the court summarily rejects such an absurd claim, it notes that the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ." U.S. Const. art. VI. In addition, the Constitution of the State of Oklahoma clearly and unambiguously acknowledges that the United States Constitution is the "supreme law of the land." Okla. Const. art. I, § 1. Thus, despite plaintiff's arguments to the contrary, the residents of Oklahoma are within "the legislative jurisdiction of the United States" and must abide by the laws of the United States.

Finally, plaintiff claims that he is outside of the legal jurisdiction of the United States because he is not a citizen of the United

---

9. Plaintiff's adamant assertion that he is not subject to the jurisdiction of the United States clearly contradicts his decision to file his complaint in the Court of Federal Claims-a federal court. His assertion is curious given that he invokes the protections of federal law, including the Contract Clause and Fifth Amendment of the United

States Constitution as well as various federal statutes. Surely, if plaintiff seeks the protection of the United States Constitution and the laws of the United States in a federal court, he cannot also claim that he is not subject to the jurisdiction of the United States.

States, but rather is "a U.S. National" pursuant to 8 U.S.C. §§ 1101(a)(21), 1408 (2000). Compl. ¶¶ 9, 45. The following individuals are considered "nationals, but not citizens, of the United States":

(1) A person born in an outlying possession of the United States on or after the date of formal acquisition of such possession;

(2) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens, of the United States, and have had a residence in the United States, or one of its outlying possessions prior to the birth of such person;

(3) A person of unknown parentage found in an outlying possession of the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in such outlying possession; and

(4) A person born outside the United States and its outlying possessions of parents one of whom is an alien, and the other a national, but not a citizen, of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than seven years in any continuous period of ten years. . . .

8 U.S.C. § 1408. For the purposes of this statute, the United States is defined as "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States." *Id.* § 1101(a)(38). And, an "outlying possession of the United States" is defined as "American Samoa and Swains Island." *Id.* § 1101(a)(29). Thus, to qualify as a "U.S. National" under 8 U.S.C. § 1408, an individual cannot have been born within the continental United States, Alaska, Hawaii, Puerto Rico, Guam, or the United States Virgin Islands. Because plaintiff was "born in an American state," Compl. Ex. 8 at 64, he cannot, by definition, be a "U.S. National." In fact, because plaintiff was "born in an American state," he is a citizen of the United States.[10] U.S. Const. amend. XIV, § 1 ("All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."); 8 U.S.C. § 1401(a) (providing that "a person born in the United States, and subject to the jurisdiction thereof" is a national and citizen of the United States); *United States v. Wong Kim Ark,* 169 U.S. 649, 687, 18 S.Ct. 456, 42 L.Ed. 890 (1898) (holding that individuals within the geographic jurisdiction of the United States are "subject to the jurisdiction" of the United States), *cited in Plyler v. Doe,* 457 U.S. 202, 211 n. 10, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In sum, there is no question that plaintiff, as a resident and citizen of the United States, is subject to the laws of the United States and that his arguments to the contrary are frivolous.

## B. The United States Code Provides Prima Facie Evidence of the Laws of the United States

■ Plaintiff also challenges the validity and applicability of the United States Code. Specifically, plaintiff alleges the following:

The court is respectfully noticed that the U.S. CODE is itself not law, but merely an index of all laws, permanent and temporary *enacted* by the Congress. The code itself is an amalgamation (meaning to combine or unite into one form, which has several uses) of federal laws applicable within the union of freely associated states, as well as within the United States (District of Columbia), federally owned territories, and other property, wherein the Congress has a 'municipal' or plenary power and may enact laws, not made in consideration of the limits of power that exist within the union.

Compl. ¶ 36. Plaintiff is mistaken. On July 30, 1947, the United States Congress ("Congress") "codified and enacted into positive law" title 1 of the United States Code, which provides the following:

In all courts, tribunals, and public offices of the United States, at home or abroad, of

---

**10.** Plaintiff both embraces and rejects his United States citizenship, depending upon whether he believes his citizenship will help or hinder his cause. *Compare* Compl. ¶¶ 9, 45, *with* Compl. Ex. 8 at 64. Plaintiff cannot have it both ways.

the District of Columbia, and of each State, Territory, or insular possession of the United States—

(a) United States Code.-The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States....

Act of July 30, 1947, ch. 388, 61 Stat. 633, 633, 638 (codified as amended at 1 U.S.C. § 204 (2000)). There is no question that Congress has provided that the United States Code is prima facie evidence of the laws of the United States,[11] and that these laws are applicable in the courts of the United States. *See also Brown v. United States*, 35 Fed.Cl. 258, 268–69 (1996) (citing cases from other federal courts supporting the same proposition), *aff'd*, 105 F.3d 621 (Fed. Cir.1997).

## C. The Department of the Treasury Is Not a Foreign Entity and the Secretary of the Treasury Is Not a Foreign Principal

Another argument advanced by plaintiff is that the "Secretary of Treasury" is a "foreign principle [sic]" who controls "foreign assets," and not the "public money" of the United States. Compl. ¶¶ 40–41. Plaintiff specifically avers:

11. Generally, the United States Code is prima facie evidence of the laws of the United States. 1 U.S.C. § 204(a). However, the titles of the United States Code that Congress has enacted into positive law—1, 3–5, 9–11, 13–14, 17–18, 23, 28, 31–32, 34–40, 44, 46, and 49–carry even greater legal weight. Titles of the United States Code enacted into positive law are "legal evidence of the laws therein contained...." *Id.* Further, all of the laws enacted by Congress are "compiled, edited, indexed, and published" in the United States Statutes at Large, which provides the "legal evidence of laws ... in all the courts of the United States, the several States, and the Territories and insular possessions of the United States." *Id.* § 112. Thus, if there is doubt about a law contained, or not contained, in the United States Code, a court must look to the United States Statutes at Large to determine whether the law has or has not been repealed. *See U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 448–63, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (analyzing whether a statute

For its own purposes, not important here, Congress has seen fit to employ *foreign principles* [sic] to assist in meeting its *international* obligations to others. The Secretary of Treasury, Henry M. Paulson, is also the Governor of the International Monetary Fund, and directs the Internal Revenue Service, successor to the Commissioner of Internal Revenue of Porto [sic] Rico.... The 'Department of Treasury' operates as a 'special drawing account' from which foreign obligations to the International Development Bank,[12] and the International Monetary Fund are paid, hereinafter the 'Bank and the Fund'. *See* the Special Drawing Rights Act, 22 U.S.C. § 286n, et [ ] seq. Assets paid into the "Department of Treasury" are the assets of the Bank and the Fund, and are specifically not 'public money' belonging to the United States. These foreign assets are disbursed extra-nationally as "SDRS".[13] ... Money is fungible. The only separation between the 'public money' of the United States, and the foreign accounts managed for the Bank and the Fund, is in the operation of the accounts themselves. There is no statutory basis for commingling "public money" in the Treasury of the United States, with the foreign assets held in the Department of Treasury. And the Constitution contains no such grant of power by the people. "The United States has a 'Treasury of the United States' (dif-

omitted from the United States Code remained in force).

12. Given the context, the court infers that "International Development Bank" is actually a reference to the International Bank for Reconstruction and Development. *See* 22 U.S.C. § 286 (2000) (authorizing the President "to accept membership for the United States in the International Monetary Fund ... and in the International Bank for Reconstruction and Development....").

13. Plaintiff does not explain to what "SDRS" refers. The court infers from the context of the reference that plaintiff is referring to "Special Drawing Rights," or "SDRs." The International Monetary Fund is financed mainly through quota subscriptions from member countries, which are denominated in Special Drawing Rights. International Monetary Fund, *IMF Quotas* (April 2007), http://www.imf.org/external/np/exr/facts/quotas.htm.

ferent from Department of Treasury). The Treasury is in the Department of Treasury." 31 U.S.C. § 302.

*Id.* ¶ 40 (footnotes added). Plaintiff also contends that because the Secretary of the Treasury is a foreign principal, "attorneys in the Department of Justice may not enter a defense" on the Secretary of the Treasury's behalf. *Id.* ¶ 42. Plaintiff's contentions lack merit.

In 1789, Congress created the "Department of Treasury." Act of Sept. 2, 1789, ch. 12, 1 Stat. 65, 65 (1789). The Department of Treasury was to be headed by "a Secretary of the Treasury," who was charged with managing the revenue and expenses of the Treasury. *Id.* §§ 1–2. In the almost 218 years that have passed since its creation, the Department of the Treasury remains headed by the Secretary of the Treasury, who is responsible for the management of the Treasury's revenue and expenses. 31 U.S.C. §§ 301(a)-(b), 321, 3301 (2000 & Supp. III 2004). Thus, the Department of the Treasury is not a foreign entity.

In 1945, the United States accepted membership in the International Monetary Fund ("IMF") and the International Bank for Reconstruction and Development ("IBRD"). Bretton Woods Agreement Act, ch. 339, § 3, 59 Stat. 512, 512 (1945) (codified at 22 U.S.C. § 286). Both the IMF and the IBRD are overseen by a Board of Governors, which consist of one governor from each member country. *See* IBRD, *Governors,* http://go.worldbank.org/ L105TJPQC0 (last visited July 2, 2007); IMF, *IMF Members' Quotas and Voting Power, and IMF Board of Governors,* http://www.imf.org/external/np/sec/memdir/members.htm (last updated June 14, 2007). The Bretton Woods Agreement Act empowered the president, subject to confirmation by the United States Senate ("Senate"), to appoint one person to serve as the United States' governor for both the IMF and the IBRD. Bretton Woods Agreement Act § 3 (codified at 22 U.S.C. § 286a(a)). On August 3, 2006, the Senate confirmed the nomination of the Secretary of the Treasury, Henry M. Paulson, Jr., to serve as a governor of the IMF and the IBRD. 152 Cong. Rec. S8906 (2006). Accordingly, the Secre-

tary of the Treasury of the United States is the United States' duly-appointed and legally-authorized representative to the IMF and the IBRD. Thus, the Secretary of the Treasury is not a foreign principal.

The Bretton Woods Agreement Act also provided a mechanism by which the United States would contribute its share of funds to the IMF and the IBRD. *See* Bretton Woods Agreement Act § 7 (codified as amended at 31 U.S.C. § 5302 (2000)). Specifically, the Secretary of the Treasury is permitted to use funds from the Treasury to pay the obligations of the United States to the IMF and the IBRD. *Id.;* 22 U.S.C. § 286e. Thus, Mr. Paulson, serving as the Secretary of the Treasury, is legally authorized to contribute "public money" to the IMF and the IBRD, and he is not acting as a "foreign principal" when he does so. Accordingly, there is no basis for plaintiff's concern that the United States is commingling "public money" with "foreign assets." Furthermore, because the Secretary of the Treasury is not a "foreign principal," attorneys within the Department of Justice may enter appearances on his behalf. *See also* 28 U.S.C. § 516 (2000) ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.").

### D. The Internal Revenue Service Is an Agency of the United States Government

In addition to challenging the domestic authority of the Department of the Treasury, plaintiff challenges the entire legal authority of the IRS. Plaintiff makes two arguments. First, plaintiff contends that the IRS is not an agency of the United States government. *See* Compl. ¶¶ 26, 35, 40. Second, plaintiff asserts that the IRS and its agents are "agents of a foreign principle [sic]." *Id.* ¶¶ 15, 40. Plaintiff's arguments are frivolous.

Title 26 of the United States Code is the Internal Revenue Code ("IRC"). The "administration and enforcement" of the IRC "shall be performed by or under the supervision of the Secretary of the Treasury." 26

U.S.C. § 7801(a)(1) (2000 & Supp. II 2003). The Secretary of the Treasury may "delegate duties and powers of the Secretary to another officer or employee of the Department of the Treasury." 31 U.S.C. § 321(b)(2). Indeed, within the Department of the Treasury is the Commissioner of Internal Revenue ("Commissioner"), who bears responsibility for the administration and enforcement of the IRC. 26 U.S.C. § 7803(a); *see also* Treas. Dep't Order No. 150–10 (Apr. 22, 1982) (delegating the responsibility "for the administration and enforcement of the Internal Revenue laws" to the Commissioner). In turn, the Commissioner "is authorized to employ such number of persons as the Commissioner deems proper for the administration and enforcement of the internal revenue laws...." 26 U.S.C. § 7804. Thus, the IRS-i.e., the Commissioner and his or her employees-is a part of the Department of the Treasury. The Department of the Treasury is an executive agency of the United States. 5 U.S.C. § 101 (2000) (as amended by Pub.L. No. 109–241, § 902(a)(1), 120 Stat. 516, 566 (2006)); *id.* § 105; 31 U.S.C. § 301. Accordingly, the IRS is an agency of the United States government.[14] It follows that, like the Department of the Treasury of which it is a part, the IRS and its agents are not "agents of a foreign principle [sic]."

### E. The Secretary of the Treasury Is Authorized to Settle Claims of or Against the United States Government

■ In addition to challenging the authority of the Department of the Treasury and the IRS to act on behalf of the United States, plaintiff contends that the Secretary of the Treasury cannot settle claims "of or against the United States." Compl. ¶¶ 41, 43, 47 (citing 31 U.S.C. § 3702(a)); *see also id.* ¶ C. Plaintiff is incorrect. The statute plaintiff cites provides:

*Except as provided in this chapter or another law,* all claims of or against the United States Government shall be settled as follows:

(1) The Secretary of Defense shall settle—

(A) claims involving uniformed service members' pay, allowances, travel, transportation, payments for unused accrued leave, retired pay, and survivor benefits; and

(B) claims by transportation carriers involving amounts collected from them for loss or damage incurred to property incident to shipment at Government expense.

(2) The Director of the Office of Personnel Management shall settle claims involving Federal civilian employees' compensation and leave.

(3) The Administrator of General Services shall settle claims involving expenses incurred by Federal civilian employees for official travel and transportation, and for relocation expenses incident to transfers of official duty station.

(4) The Director of the Office of Management and Budget shall settle claims not otherwise provided for by this subsection or another provision of law.

31 U.S.C. § 3702(a) (emphasis added); *see also id.* § 3701(b)(1) (defining "claim" or "debt," with respect to "claims of the United States Government," as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States...."). The Secretary of the Treasury derives his ability to settle claims of or against the United States, which by definition includes overdue taxes, from "another law." *See id.* § 3711(a) (authority to settle claims of the United States government); *see also* 26 U.S.C. § 6402(a) (authority to refund overpayment of taxes); *id.* § 7426(h)(3) (authority to pay claims by nontaxpayers); *id.* § 7432(c) (authority to pay claims for the failure to release a lien); *id.* § 7433(c) (authority to pay claims for the unauthorized collection actions); *id.* § 7435(c) (authority to pay claims for the unauthorized enticement

---

**14.** Plaintiff cites an answer filed by the United States in a case before the United States District Court for the District of Idaho as evidence to the contrary. *See* Compl. ¶ 35; Compl. Ex. 2 at 14–20 (answer in *Diversified Metal Prods., Inc. v. T-Bow Co. Trust,* Civ. No. 93–405–EEJL). Pleadings filed in other cases in other courts are not binding on this court.

of information disclosure); *c.f.* 31 U.S.C. § 1304 (appropriation of funds to pay judgments, awards, and compromise settlements). Accordingly, both the IRS and the Department of the Treasury may settle claims "of or against the United States."

### F. Plaintiff's Retirement Annuity Payments Are Income for the Purposes of the Internal Revenue Code

■ In his complaint, plaintiff repeatedly asserts that his retirement annuity payments are property, and not income subject to taxation. *See* Compl. ¶¶ A, 25, 48(2), 54–57, 65. Plaintiff's view is clearly at odds with the IRC. Specifically, section 63 of the IRC defines taxable income as "gross income minus the deductions allowed by this chapter. . . ." 26 U.S.C. § 63; *see also id.* § 62 (listing other allowable deductions from gross income). Contrary to plaintiff's assertion, Compl. ¶ 55, "gross income" is defined broadly in the IRC to include "all income from whatever source derived. . . ." 26 U.S.C. § 61(a); *see also Comm'r v. Schleier,* 515 U.S. 323, 327, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (noting that the Supreme Court has "repeatedly emphasized the 'sweeping scope' of this section and its statutory predecessors"). In addition, the IRC specifically includes annuities within the definition of "gross income." 26 U.S.C. § 61(a)(9); *id.* § 72; *see also Shimota v. United States,* 943 F.2d 1312, 1312 (Fed.Cir.1991) (holding that "the lump-sum payment received by [a retiree] from the [CSRS] after commencement of his CSRS retirement annuity was includible in income and subject to federal income taxation"). But, even if the annuities were not expressly included within "gross income,"

they would still be included in "gross income" if the IRC did not explicitly exclude them. *Schleier,* 515 U.S. at 328, 115 S.Ct. 2159; *Dickman v. Comm'r,* 465 U.S. 330, 334 n. 4, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984). The IRC does not contain a provision excluding federal retirement annuity payments from the definition of "gross income." Accordingly, plaintiff's retirement annuity payments are income for the purposes of the IRC.[15]

### III. DEFENDANT'S MOTION TO DISMISS

#### A. Standard

Defendant's motion to dismiss seeks the dismissal of plaintiff's claims for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). In ruling on an RCFC 12(b)(1) motion, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995). Plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction.[16] *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds,* 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

---

**15.** This conclusion does not foreclose the argument that plaintiff may have certain property rights in his retirement annuity. The IRC's definition of income for the purposes of computing income taxes is a concept distinct from the possibility that there might be some vested rights in a federal retirement annuity. This issue is discussed below.

**16.** In his motion to strike, plaintiff requests that the court strike the entirety of defendant's appendix to its motion to dismiss, claiming that the appendix is irrelevant to the questions presented in plaintiff's complaint. Pl.'s Resp. ¶¶ 33–43. Plaintiff misunderstands the procedural posture of this case. Defendant's motion seeks the dis-

missal of plaintiff's complaint for lack of subject matter jurisdiction. Mot. Dismiss 1. Thus, before the court can address the merits of plaintiff's complaint, it must determine whether it has jurisdiction (*i.e.*, legal authority) to do so. The court may consider any and all extrinsic evidence that may bear on its subject matter jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds,* 846 F.2d at 747. Thus, the court can, and did, consider the submissions contained in the appendix to defendant's motion to dismiss in determining its jurisdiction. Accordingly, the court denies plaintiff's motion to strike.

## B. Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the existence of subject matter jurisdiction at any time.[17] *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, provides that the Court of Federal Claims has jurisdiction over claims against the United States that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States, and that do not sound in tort. 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir. 1994). In order to find that a constitutional clause, statute, or regulation is money-mandating, "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967); *see also id.* at 1009 ("Under Section 1491, what one must always ask is whether the constitutional clause or legislation which the claimant cites

---

**17.** Plaintiff's view of the court's subject matter jurisdiction is confused. In his Interim Reply, plaintiff contends:

> SUBJECT MATTER JURISDICTION, as opposed to statutory or Constitutional jurisdiction[,] is invoked solely by the sufficiency of the pleadings. Only the parties can empower the Court to make any decision, by presenting the Court with a true case or controversy. Cites omitted. At present, this Court *lacks subject matter jurisdiction* of the defendant's *MOTION TO DISMISS.* In consequence, this Court lacks authority to either consider or grant the motion. Such *jurisdictional authority* adheres to the summary judgment standard. Judgment in favor of dismissal can be made only upon examination of evidence entered on the record....

Interim Reply ¶ 8. First, plaintiff confounds two distinct inquiries: whether the case is justiciable and whether the court has jurisdiction. Even if the United States Constitution or a federal statute provides a court with jurisdiction to decide a legal issue, "the existence of jurisdiction does not confirm the court's ability to supply relief." *Murphy v. United States,* 993 F.2d 871, 872 (Fed. Cir.1993). "The issue must also be justicia-

ble...." *Id.* Justiciability "encompasses a number of doctrines under which courts will decline to hear and decide a cause," and includes the "doctrines of standing, mootness, ripeness, and political question." *Fisher v. United States,* 402 F.3d 1167, 1176 (Fed.Cir.2005). "[T]he requirement that a party have 'standing' to appear before a court is intended to ensure that the court is deciding a real 'case or controversy.'" *Zevalkink v. Brown,* 102 F.3d 1236, 1243 (Fed.Cir. 1996).

In this case, justiciability, and in particular the case or controversy requirement, is not at issue. Instead, the issue is whether the Court of Federal Claims has "the power to declare the law"—that is, whether the court has jurisdiction-the determination of which is a prerequisite to deciding the merits of plaintiff's claims. *Ex parte McCardle,* 74 U.S. (7 Wall.) at 514. Defendant, the court, or even plaintiff himself may raise the issue of jurisdiction at any time, and the court may consider any evidence necessary to determine its jurisdiction. *Land,* 330 U.S. at 735 & n. 4, 67 S.Ct. 1009; *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004); *Reynolds,* 846 F.2d at 747. Thus, defendant's motion to dismiss, which raises the sole issue of jurisdiction, is properly before the court.

can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.").

## C. Plaintiff's "Statement of Subject Matter Jurisdiction"

Plaintiff's complaint contains a section titled "Statement of Subject Matter Jurisdiction," in which plaintiff invokes the United States Constitution and various federal statutes as the basis for this court's exercise of jurisdiction.[18] The court will address each of these alleged jurisdictional bases in turn.

Initially, plaintiff claims that the Court of Federal Claims "has Article III jurisdiction under the federal common law holdings of the Supreme Court interpreting constitutional commands." Compl. ¶ 10; *see also id.* ¶ 13 (citing the Supreme Court decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as a basis for jurisdiction). As the court informed plaintiff in a January 18, 2007 order: "[T]he United States Court of Federal Claims is not an article III court.... *See* 28 U.S.C. § 171(a) ('The [United States Court of Federal Claims] is declared to be a court established under article I of the Constitution of the United States.')." Further, while the Court of Federal Claims is bound by United States Supreme Court ("Supreme Court") precedent, Supreme Court precedent does not grant jurisdiction in the Court of Federal Claims. *See Loveladies Harbor, Inc.,* 27 F.3d at 1554 (stating that jurisdiction may only be founded on a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States.").

■ Plaintiff next invokes the APA as a basis for jurisdiction. Compl. ¶¶ 11–12 (citing "5 U.S.C. § 702 et [ ] seq."). The APA provides for judicial review of agency actions.[19] 5 U.S.C. § 702 (2000). However, the Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and grant relief pursu-

ant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1994)." *Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997). Thus, the court does not have jurisdiction to consider plaintiff's claims under the APA.

■ The third basis for jurisdiction invoked by plaintiff is 42 U.S.C. § 1983, Compl. ¶ 13, which provides for a civil action for the deprivation of rights, 42 U.S.C. § 1983 (2000). As previously determined by the Court of Federal Claims: "Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision by virtue of 28 U.S.C. § 1343(a)(4) (1988). Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction." *Blassingame v. United States,* 33 Fed.Cl. 504, 505 (1995), *aff'd,* 73 F.3d 379 (Fed.Cir.1995).

Plaintiff then invokes 28 U.S.C. § 1346 as a basis for this court's jurisdiction. Compl. ¶ 13; *see also id.* ¶ 39 (citing a federal district court case). In particular, plaintiff invokes subsection (a)(1), which provides:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

28 U.S.C. § 1346(a)(1) (2000). To further support his argument that this court can exercise its jurisdiction over his complaint, plaintiff relies upon 28 U.S.C. § 1346(d), which provides: "The district courts shall not have jurisdiction under this section of any civil action or claim for a pension." As is plain by the text of the statute, 28 U.S.C. § 1346 addresses the jurisdiction of the Unit-

---

18. Additionally, plaintiff invokes 26 U.S.C. § 7426 and several rules of the RCFC as a basis for "joinder of this action to a third party...." The court disposed of the issue of joinder in its December 7, 2006 order.

19. Plaintiff's invocation of the APA, which applies to agency action, is at odds with his assertion that the IRS is not a federal agency.

ed States district courts, and not that of the Court of Federal Claims. *See Hinck v. United States,* 64 Fed.Cl. 71, 76 (2005) ("Although this court is mentioned in section 1346(a)(1), ... this is merely a cross-reference to the Tucker Act and ... this court's refund jurisdiction derives from the latter provision." (quoting *Usibelli Coal Mine v. United States,* 54 Fed.Cl. 373, 375 n. 6 (2002))), *aff'd,* 446 F.3d 1307 (Fed.Cir.2006), *aff'd,* —— U.S. ——, 127 S.Ct. 2011, 167 L.Ed.2d 888. Furthermore, as the court informed plaintiff in its January 18, 2007 order: "[B]ecause it is an article I court, the United States Court of Federal Claims is not a federal district court. *See Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002) (per curiam); *Alford v. United States,* 3 Cl.Ct. 229, 230 (1983)." Thus, 28 U.S.C. § 1346(a)(1) has no application in this case and does not provide for jurisdiction in this court. *See also Fry v. United States,* 72 Fed.Cl. 500, 505 (2006) (holding the same).

 The fifth basis for jurisdiction relied upon by plaintiff is the Contract Clause. Compl. ¶ 13; *see also id.* ¶¶ A, 1, 5, 10, 15, 19–20, 28, 47(2), 56, 62, 70. The Contract Clause provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10, cl. 1. A plain reading of this constitutional provision shows that the Contract Clause is a prohibition directed at the states, and not the federal government, *see Yankee Atomic Elec. Co. v. United States,* 112 F.3d 1569, 1577 (Fed.Cir.1997) ("[T]he Contracts Clause does not apply to acts of the United States."), and the Contract Clause does not mandate the payment of money, *see Eastport S.S. Corp.,* 372 F.2d at 1007 (stating that a constitutional clause must grant a plaintiff, "expressly or by implication, a right to paid a certain sum"). Consequently, this court does not have jurisdiction to entertain a claim under

the Contract Clause. *See also Fry,* 72 Fed. Cl. at 508 (holding the same).

Plaintiff's final purported basis for jurisdiction in this court is 28 U.S.C. § 1331.[20] Compl. ¶ 14. Section 1331, "Federal question," provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This statute is clearly inapplicable to the Court of Federal Claims, as the Court of Federal Claims is not a district court. *See Ledford,* 297 F.3d at 1382; *Alford,* 3 Cl.Ct. at 230. Thus, it cannot serve as a basis for jurisdiction in this court. *See also Fry,* 72 Fed.Cl. at 504–05 (holding the same).

### D. The Remainder of Plaintiff's Complaint

Although none of the constitutional provisions or federal statutes cited in the "Statement of Subject Matter Jurisdiction" section of plaintiff's complaint bestows jurisdiction on this court, the court will examine the remainder of plaintiff's *pro se* complaint to determine whether plaintiff has otherwise properly invoked this court's jurisdiction. Underlying the entire complaint is plaintiff's contention that he does not owe income taxes on the retirement annuity that he receives from the OPM. Compl. ¶ 25. Plaintiff also contends that the IRS cannot levy his annuity payments and that the OPM improperly executed the IRS's levy. *Id.* ¶ 15. Plaintiff cites a number of legal bases for these contentions, including: violations of various federal statutes and regulations concerning the government's authority to impose and execute the levy; a violation of the DCIA; the failure of the IRS to provide him with an assessment of his taxes due; a breach of contract; a breach of fiduciary duty resulting in a "wrongful" conversion of his annuity; a Fifth Amendment taking; and a violation of the FOIA. *Id. passim.* As remedies for de-

---

**20.** Plaintiff actually invokes 28 U.S.C. § 1333, which is titled "Admiralty, maritime and prize cases." Given the context of plaintiff's invocation—"This court has jurisdiction for joinder of this action to a third party, under *Federal Question,* 28 U.S.C. § 1333, and RCFC rules 13, 18, and 19," Compl. ¶ 14 (emphasis added)—the court assumes that "1333" was a typographical error. However, if plaintiff did intend to invoke

28 U.S.C. § 1333, the court notes that this case is not an admiralty, maritime, or prize case. Further, 28 U.S.C. § 1333 provides for jurisdiction only in "[t]he district courts." Because the Court of Federal Claims is not a district court, *Ledford,* 297 F.3d at 1382, *Alford,* 3 Cl.Ct. at 230, it lacks jurisdiction pursuant to 28 U.S.C. § 1333.

fendant's alleged wrongdoing, plaintiff seeks a refund of taxes withheld from his annuity payments, declaratory and injunctive relief, and legal costs. *Id.* The court will address whether any of these remaining claims are within this court's jurisdiction.

### 1. The Court Lacks Jurisdiction Over Plaintiff's Claim for a Tax Refund

 One of plaintiff's goals in this lawsuit is the return of all taxes, penalties, and interest withheld from his retirement annuity payments. Compl. ¶¶ 60–61, 70. In order to maintain a lawsuit for the refund of taxes, a taxpayer must have fully paid the taxes at issue-this is the "full payment rule." *Flora v. United States,* 357 U.S. 63, 75, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *see also Shore v. United States,* 9 F.3d 1524, 1526 (Fed.Cir. 1993) (applying the full payment rule "to tax refund suits brought in the Court of Federal Claims" and identifying the rule as a jurisdictional requirement). However, prior to filing suit for a tax refund, a taxpayer must file a timely claim for refund with the IRS. 26 U.S.C. § 7422(a); *see also Sun Chem. Corp. v. United States,* 698 F.2d 1203, 1206 (Fed. Cir.1983) ("It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit."). To be timely, the claim for refund must be filed with the IRS within either three years of the filing of the tax return or within two years of the date of tax payment, whichever period ends last. 26 U.S.C. § 6511(a). Once a taxpayer files a claim for refund with the IRS, the taxpayer must wait at least six months before filing a lawsuit, unless the claim is denied before the end of the six months. *Id.* § 6532(a)(1). Additionally, the taxpayer must file the lawsuit within two years of the earlier of (1) the mailing of the notice of disallowance of the claim or (2) the filing of a waiver of notice of disallowance. *Id.*

§§ 6532(a)(1), (3). In this case, plaintiff has not provided any evidence that he filed a claim for refund with the IRS, a prerequisite to this court's jurisdiction.[21] *See* RCFC 9(h)(6) (requiring complaints seeking a refund of federal taxes to include "for each tax year or period for which a refund is sought, the amount, date, and place of each payment to be refunded ... [and] the date and place the claim for refund was filed...."). Accordingly, the court lacks jurisdiction over plaintiff's tax refund claim.[22] Despite plaintiff's implied contention to the contrary, Compl. ¶ 52, requiring plaintiff to first seek a refund from the IRS before filing suit does not deprive him of any rights or remedies.

### 2. The Statutes Authorizing the Imposition and Execution of Levies Are Not Money–Mandating and Therefore Do Not Provide This Court With Jurisdiction

 Plaintiff also challenges the propriety of the IRS levy on his retirement annuity payments and the OPM's execution of the levy. *Id.* ¶¶ B, 1, 15, 17, 27–38, 43–51, 68. Plaintiff specifically contends that the DCIA, Pub.L. No. 104–134, § 31001, 110 Stat. 1321–358, 1321–358 to 1321–380, and the DCIA's implementing regulations, *e.g.,* 31 C.F.R. § 285.4, were the basis for the IRS levy and the execution of that levy by the OPM. Compl. ¶¶ 17, 27, 35. However, as plaintiff himself notes, *id.* ¶ 27, the DCIA concerns only nontax debts. 110 Stat. at 1321–358 to 1321–380. Thus, plaintiff cannot state a violation of the DCIA or its implementing regulations. *See, e.g.,* Compl. ¶ 50 (citing one implementing regulation, 31 C.F.R. § 901.12 (2006)). Furthermore, plaintiff has not cited, and the court cannot find, a section of the DCIA or its implementing regulations that mandates the payment of money for a violation of its provisions. Without a money-

---

**21.** In his complaint, plaintiff made the bald assertion that "[a]dministrative remedies have been exhausted...." Compl. ¶ 15. However, plaintiff has not provided any specific allegations or evidence of the requisite tax refund claim, despite his burden to come forward with evidence of jurisdiction. *McNutt,* 298 U.S. at 189, 56 S.Ct. 780; *Reynolds,* 846 F.2d at 748.

**22.** Furthermore, at the time plaintiff filed his complaint, November 2, 2006, plaintiff had not fully paid the income tax assessed by the IRS. *See* Compl. Ex. 1 at 2 (noting that the tax levy would be divided into eight monthly installments, the first installment to be withheld from plaintiff's October 1, 2006 annuity payment). Thus, the court also lacks jurisdiction under the "full payment rule." *Flora,* 357 U.S. at 75, 78 S.Ct. 1079; *Shore,* 9 F.3d at 1526.

mandating provision, the court cannot exercise jurisdiction under the Tucker Act.

The IRS derives its authority to levy property to recover unpaid taxes from 26 U.S.C. § 6331:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary [of the Treasury] to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C. § 6331(a). The Secretary of the Treasury can authorize a continuous levy of specified payments and such a continuous levy "shall attach to up to 15 percent of any specified payment due to the taxpayer...." *Id.* § 6331(h)(1). A "specified payment" includes "any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee...." *Id.* § 6331(h)(2)(A).

The statute's definition of "specified payments" clearly includes federal retirement annuity payments, eligibility for which is not based on a recipient's income or assets, but rather the length of federal employment.

Thus, contrary to plaintiff's assertion, Compl. ¶¶ 45–47, 49, 51, it appears that 26 U.S.C. § 6331 authorizes both the IRS levy and the OPM's execution of the levy.[23] Such a finding does not matter, however, if 26 U.S.C. § 6331 does not provide this court with jurisdiction. Indeed, the court can find no provision in the statute mandating the payment of money for a violation of its provisions. Thus, the court lacks jurisdiction to consider the merits of plaintiffs claim under 26 U.S.C. § 6331.[24] *See also Fry,* 72 Fed.Cl. at 506 (holding the same).

 Plaintiff asserts that certain sections of title 5 of the United States Code protect his retirement annuity from IRS levy. Compl. ¶¶ 27, 30 (citing 5 U.S.C. §§ 8346, 8467(a)(1)-(2), 8470(a)-(b)). Section 8346 provides that retirement annuity payments paid pursuant to the Civil Service Retirement Act are not "subject to execution, levy, attachment, garnishment, or other legal process, *except as otherwise may be provided by Federal laws.*" 5 U.S.C. § 8346(a) (2000) (emphasis added). Similarly, section 8470 provides that retirement annuity payments paid pursuant to the Federal Employees' Retirement System Act of 1986 are not "subject to execution, levy, attachment, garnishment or other legal process, *except as otherwise may be provided by Federal laws.*" *Id.* § 8470 (emphasis added). Neither of these

**23.** Plaintiff cites the decision of the United States Court of Appeals for the Second Circuit ("Second Circuit") in *United States v. Long Island Drug Co.,* 115 F.2d 983 (2d Cir.1940), in support of his contention that the OPM lacks the authority to execute a continuous levy on his retirement annuity payments. Compl. ¶ 51. In *Long Island Drug Co.,* the Second Circuit concluded: *"In the absence of a statute to the contrary,* it is the usual rule that a garnishment does not affect future earnings or salary." 115 F.2d at 986 (emphasis added). The language of the Second Circuit's opinion shows that plaintiff's argument lacks merit as it clearly allowed for the possibility that "a statute to the contrary" could support a continuing garnishment.

**24.** One of plaintiff's arguments on the merits is that the OPM withheld too much from his monthly annuity payments. Compl. ¶ 51. Plaintiff's net monthly annuity payment was approximately $4,528.05. Compl. Ex. 1 at 4. For seven months, the OPM withheld $3,740.55, or 82.6%, of that payment, leaving plaintiff with a monthly

annuity payment of $787.50. *Id.* There is presently no evidence before the court concerning exactly how the OPM calculated the amount of money it withheld from plaintiff's retirement annuity payments, nor what statutes and regulations guided the OPM's calculations. *Cf.* Def.'s App. 15 (noting a requested deduction of $3,740.55 but not explaining how the IRS arrived at that amount). However, it appears that a certain amount of plaintiff's monthly retirement annuity was exempted from levy pursuant to 26 U.S.C. §§ 6334(a)(9), (d). Then, presumably, the remaining part of the monthly payment was subject to levy pursuant to 26 U.S.C. § 6331(a). Additionally, fifteen percent of plaintiff's exempt amount was subject to a continuing levy pursuant to 26 U.S.C. § 6331(h). *See generally United States v. Marsh,* 89 F.Supp.2d 1171 (D.Haw.2000) (describing a similar computation under 26 U.S.C. §§ 6331, 6334). Although the levy appears to have harsh consequences, the court reminds plaintiff that he put himself in this predicament by failing and refusing to pay his income taxes when they were due.

statutes mandates the payment of money damages and thus neither provides for jurisdiction in this court. In any event, levy of retirement annuities is "otherwise ... provided [for] by Federal laws" pursuant to 26 U.S.C. § 6331. The remaining statute cited by plaintiff from title 5, 5 U.S.C. § 8467, merely permits the OPM to pay, in whole or in part, a retiree's annuity payments to another person pursuant to a court decree or order, and does not prevent the OPM from executing an IRS levy. More importantly, it does not provide a money-mandating basis for this court's jurisdiction.

Plaintiff also asserts that the OPM is prevented from executing the IRS levy by certain sections of title 31 of the United States Code. Compl. ¶¶ 47, 49, 63 (citing 31 U.S.C. §§ 3526, 3545, 3701, 3702, 3711, 3716). In particular, plaintiff notes that the portion of title 31 of the United States Code concerning "Claims of the United States Government" permits the OPM to "make collections of *non-tax debt* limited to *its own employees,* where the effected [sic] employee consents to such elections," but if an employee fails to consent, "the non-tax debt must be referred to the Attorney General for initiation of civil action, or OPM may *request offset by IRS by withholding sums (owed the retirement fund) from tax refund payments, not from annuity payments.*" *Id.* ¶ 47 (citing 31 U.S.C. § 3716); *see also id.* ¶ 49 (citing 31 U.S.C. § 3711). Sections 3701, 3702, 3711, and 3716 are not money-mandating sources of jurisdiction in this court. Further, the language emphasized by plaintiff clearly demonstrates the inapplicability of these provisions to plaintiff.[25] *See also id.* ¶¶ 17, 43, 45, 49, 64–65 (distinguishing annuitants from employees). Plaintiff's debt is for unpaid taxes, Compl. Ex. 1 at 3, plaintiff is no longer an employee of the federal government, Def.'s App. 25, and plaintiff does not appear to owe any money to the federal retirement fund.

Plaintiff next contends that certain regulations in title 5 of the CFR prevent the OPM from executing the IRS levy. Compl. ¶¶ 27–28, 31–32, 34, 44 (citing 5 C.F.R. §§ 550.1102, 835.601–.607, 838.111, 845.103, 845.105, 845.201, 845.203, 845.206).[26] Section 550.1102 is contained within a subpart of the CFR titled "Collection by Offset From Indebted Government Employees" and applies "in recovering certain debts by administrative offset, except where the employee consents to the recovery, from the current pay account of the employee." 5 C.F.R. § 550.1102(b) (2007). Excluded from the reach of this administrative offset are "debts arising under the Internal Revenue Code." *Id.* § 550.1102(b)(1). Section 550.1102 contains no money-mandating provision that would grant this court jurisdiction. Additionally, as admitted by plaintiff, Compl. ¶ 35, section 550.1102 does not apply to plaintiff because he is not an employee with a current pay account. *See also id.* ¶¶ 17, 43, 45, 49, 64–65 (distinguishing annuitants from employees).

Sections 835.601 through 835.607 of title 5 of the CFR establish "procedures for OPM to refer past-due legally enforceable debts to the [IRS] for offset against the income tax refunds of persons owing debts to OPM." 5 C.F.R. § 835.601. Similarly, sections 845.201, 845.203, and 845.206 prescribe the procedures that the OPM must follow in collecting debts owed to the retirement fund. *Id.* § 845.201. The court lacks jurisdiction to entertain claims under these regulations as they do not mandate the payment of money damages. Further, it is clear that these sections do not apply to plaintiff as there is no evidence that he owes a debt to the OPM or the retirement fund; plaintiff owes unpaid taxes to the IRS.

Two of the regulations cited by plaintiff, sections 845.103 and 845.105, concern "[t]he use of FERS basic benefits to recover debts due the United States." *Id.* § 845.101. "Debts may be collected from FERS basic benefits only to the extent expressly author-

---

25. In addition, contrary to plaintiff's assertions, Compl. ¶ 47, because 31 U.S.C. §§ 3701, 3702, 3711, 3716 are inapplicable to plaintiff, a referral of a civil action to the Attorney General under these sections is impossible.

26. Although plaintiff cites a bevy of federal regulations, he managed to miss those directly relevant his situation: 5 U.S.C. §§ 831.1801 to .1808 (2006).

ized by Federal statute." *Id.* § 845.103. Like the previous group of regulations, sections 845.103 and 845.105 do not mandate the payment of money damages. Thus, the regulations cannot provide a basis for this court's exercise of jurisdiction. And, once again, the regulations, on their face, do not apply to plaintiff as he retired under the CSRS, not the FERS. The remaining regulation cited by plaintiff, 5 C.F.R. § 838.111, provides, in relevant part: "CSRS and FERS benefits are not subject to execution, levy, attachment, garnishment or other legal process *except as expressly provided by Federal law.*" *Id.* § 838.111(b) (emphasis added). This regulation does not mandate the payment of money and thus does not provide for jurisdiction in this court. In any event, levy of retirement payments is "expressly provided [for] by Federal law" pursuant to 26 U.S.C. § 6331.

**3. The Court Lacks Jurisdiction to Determine Whether the Internal Revenue Service Improperly Failed to Provide Plaintiff With a Record of the Assessment of His Taxes**

 In addition to arguing that the IRS lacks the authority to levy his retirement annuity, plaintiff contends that the IRS has not, as required, furnished "lawful evidence of 'assessment.'" Compl. ¶¶ 38–39, 48 (citing 26 C.F.R. §§ 301.6203–1, .6205–1(B)(2) (2000)). Although there is no evidence in the record refuting plaintiff's claim that his request for a copy of his assessment record remains unfulfilled, the court cannot rule on plaintiff's claim. Neither 26 C.F.R. § 301.6203–1 nor 26 C.F.R. § 301.6205–1(B)(2) is money-mandating. Without any money-mandating language, this court lacks jurisdiction.

**4. The Court Lacks Jurisdiction Over Plaintiff's Breach of Contract Claim**

 Plaintiff characterizes federal retirement annuities as contracts between retirees and the federal government that are governed by contract law principles. Compl.

¶¶ A, 18, 21, 23–24, 49, 47(2), 55–56, 68. Plaintiff alleges that the OPM breached the "contract" by executing the IRS levy. *Id.*

**a. Plaintiff Acquired a Vested Interest in His Federal Retirement Annuity Upon Retirement**

Defendant argues that the court lacks jurisdiction over plaintiff's breach of contract claim, contending that "it is well-settled that Federal employees derive the benefits and emoluments of their positions by appointment, not by contract, and that benefits related to employment are governed by statutes and regulations, rather than by principles of contract law." Mot. Dismiss 14. While it is true that the right to federal employment benefits derive from appointment and not contract, *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985), the question as to whether federal retirees acquire a vested interest in their retirement annuities upon retirement has been open to debate.[27] After analyzing the binding precedent that has evolved on this issue over the last 129 years, the court concludes that federal retirees have vested interests in their retirement annuities upon retirement.

The first case of note, *Pennie v. Reis,* 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426 (1889), addresses a 1878 California statute concerning the regulation of and payment to San Francisco's police force. That statute required San Francisco's treasurer to retain two dollars per month from the salary of each police officer and deposit the retained money into a life and health insurance fund. 132 U.S. at 469–70, 10 S.Ct. 149. Further, upon the death of any police officer, the treasurer was to pay to the officer's legal representative a sum of $1,000. *Id.* Petitioner, the administrator of a deceased officer's estate, sued to obtain the $1,000 payment. *Id.* at 469, 10 S.Ct. 149. However, about nine days before the officer's death, the California legislature repealed the 1878 statute. *Id.* at 469, 471, 10 S.Ct. 149. The Supreme

---

**27.** When the court uses the term "vest," it is not referring to the eligibility of an employee to receive a retirement annuity upon retirement as defined by statute. *See* 5 U.S.C. § 8332 (defining creditable service); *id.* § 8333 (defining an employee's eligibility for an annuity). Instead, the court uses the term "vest" to refer to what, if any, legal rights accrue to retirees, on the moment of their retirement, outside of those rights explicitly conferred by statute.

Court concluded that although the two dollars retained each month from each officer's salary was "called part of the officer's compensation, he never received it or controlled it," and could not prevent the money from being appropriated elsewhere. *Id.* at 470, 10 S.Ct. 149. The Supreme Court further held that the fund "was entirely at the disposal of the government until, by the happening of one of the events stated,—the resignation, dismissal, or death of the officer,-the right to the specific sum promised *became vested* in the officer or his representative." *Id.* at 471, 10 S.Ct. 149 (emphasis added). Accordingly, because the California legislature repealed the statute prior to the deceased officer's "resignation, dismissal, or death," the administrator of his estate had no vested interest in the $1,000 payment. *Id.* Although the Supreme Court was not required to decide whether the administrator of the estate would have had a vested interest in the $1,000 payment had the statute at issue not been repealed, the language used by the court strongly suggests that the administrator would have had such a vested interest.

Subsequently, in *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), the Supreme Court addressed a case concerning renewable term insurance issued by the government during World War I. 292 U.S. at 574, 54 S.Ct. 840. Under the War Risk Insurance Act, military personnel were permitted to purchase insurance policies at a low monthly premium rate. *Id.* at 576 & n. 2, 54 S.Ct. 840. The policies were renewable on an annual basis. *Id.* at 574 & n. 1, 54 S.Ct. 840. In declaring that the war risk insurance policies were contracts that created vested rights, the Supreme Court held:

> War risk insurance, while resembling in benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to former members of the Army and Navy or their dependents, differs from them fundamentally in legal incidents. *Pensions, compensation allowances, and privileges are gratuities.* They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress.

*Id.* at 576–77, 54 S.Ct. 840 (emphasis added). Thus, if a federal retirement annuity was characterized as a pension, compensation allowance, or privilege, it would be considered a gratuity and there could be no vested rights to annuity payments. In fact, the Supreme Court reached this conclusion three years later in *Dodge v. Board of Education,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937).

In *Dodge,* the Supreme Court considered Illinois' Miller Law. The Miller Law provided that each teacher retired under the law would receive $1,500 per year for life in addition to the teacher's retirement allowance. 302 U.S. at 76, 58 S.Ct. 98. The former was paid out of funds "derived from the general tax levy for educational purposes," while the latter was paid out of "a teachers' pension and retirement fund" derived from teacher contributions, gifts, legacies, interest received, and taxes. *Id.* at 75–76, 58 S.Ct. 98. In determining whether the Miller Law created a contract between a teacher and the State of Illinois, the Supreme Court concluded that "it is of first importance to examine the language of the statute.... If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested rights." *Id.* at 78, 58 S.Ct. 98. The Supreme Court then upheld the Illinois Supreme Court's conclusion that the Miller Law did not create a binding contract between the teachers and the State for the $1,500 annual payment. *Id.* at 79–81, 58 S.Ct. 98. However, it bears noting that the $1,500 annual payments were paid from a fund "derived from the general tax levy for educational purposes," and not in any way from teacher contributions. Thus, these payments are quite dissimilar to federal retirement annuity payments and are more correctly described as gratuities.

The first case in which the Supreme Court directly addressed the characterization of retirement annuities under the Civil Service Retirement Act was *Dismuke v. United States,* 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936). The government raised the issue of jurisdiction, arguing that the Tucker Act

precluded "claims for pensions" and claims "to recover fees, salary, or compensation for services of officers of the United States." 297 U.S. at 169–70, 56 S.Ct. 400. However, in its ruling, the Supreme Court distinguished between "pensions" and "annuities" for the purposes of the Tucker Act, concluding:

> The proviso withholding jurisdiction of suits on claims for pensions was part of the original Tucker Act ... at a time when the term "pensions" commonly referred to the gratuities paid by the government in recognition of past services in the Army or Navy. The annuities payable under the [Civil Service] Retirement Act are not gratuities in that sense.

*Id.* at 170, 56 S.Ct. 400; *see also Johnson v. United States,* 111 Ct.Cl. 750, 79 F.Supp. 208, 211–12 (1948) ("[I]t is to be doubted whether Congress in excepting from our jurisdiction claims for pensions had in mind anything more than those pension claims of war veterans over which the Pension Bureau was given jurisdiction."). Reading *Dismuke* together with *Lynch,* this court concludes that federal retirement annuities are not pensions, and therefore, are not gratuities.

The United States Court of Claims ("Court of Claims"), the predecessor court to both the Court of Federal Claims and the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), first addressed, in a substantive manner, federal retirees' interests in their Civil Service Retirement Act annuities in *Prentiss v. United States,* 125 Ct.Cl. 67, 117 F.Supp. 200 (1953) (on motion for rehearing). The plaintiff in *Prentiss* was entitled to a retirement annuity pursuant to the Civil Service Retirement Act, but disputed the version of the law under which his annuity payments should be calculated. 117 F.Supp. at 202. Specifically, plaintiff argued that the 1948 version of the law, which was in effect when plaintiff was first eligible to receive annuity payments in 1952, controlled the calculation of his annuity payments, rather than the 1942 version of the law, which was in effect when plaintiff separated from

government service in 1946. *Id.* at 202–03. In addressing plaintiff's argument, the Court of Claims was required to construe section 8 of the Act of February 28, 1948, which provided, in relevant part:

> In case [any] officer of employee shall have been separated subsequent to January 23, 1942, and prior to the effective date of this Act have *acquired title to annuity* under Section 7 of the Act of May 29, 1930, as amended, beginning after such effective date, his rights shall be determined and annuity computed as though this Act had not been enacted.

*Id.* at 201 (citing 62 Stat. 48, 53 (codified at 5 U.S.C. § 736c)) (emphasis added). The Court of Claims held: "[W]hen plaintiff ... was separated from the service, he became entitled to, i.e., 'acquired title' to, a deferred annuity, the benefits of such annuity to commence when he reached the age of 62.... [P]laintiff ... acquired upon separation from the service ... a vested title to a deferred annuity...." *Id.* at 204; *see also id.* at 205 (holding that plaintiff "acquired title to a deferred annuity ... upon his separation from the service...."). Although the Court of Claims was construing the language of a statute that no longer exists in the United States Code, its holding has a broader application.

The Court of Claims expanded upon its holding in *Prentiss* in *Lawrenson v. United States,* 139 Ct.Cl. 370, 153 F.Supp. 790 (1957). The issue in *Lawrenson,* like *Prentiss,* concerned the applicability of the 1948 amendment to the Civil Service Retirement Act. In *Lawrenson,* the plaintiff was placed on the disability annuity rolls from August 1, 1946, to December 31, 1951, during which time he received a disability annuity.[28] 153 F.Supp. at 791. Plaintiff attained the age of fifty-five years on September 30, 1951, and on November 6, 1953, applied for "an immediate reduced annuity to be effective from January 1, 1952...." *Id.* However, the 1948 amendment changed the age of eligibility for the immediate reduced annuity to sixty-two years. *Id.* The Court of Claims concluded:

---

**28.** The plaintiff before the Court of Claims was the administratrix of the estate of the deceased former federal employee. Like the Court of

Claims, this court refers to the deceased former federal employee as "plaintiff."

Under the terms of the Civil Service [Retirement] Act, plaintiff could not have become entitled to a life annuity until after December 31, 1951, the date when his disability annuity was terminated. However, before that date the amendment of February 28, 1948, was enacted and the expectancy of a reduced annuity at the age of 55 years was abolished. The 1948 amendment gave him only the right to a deferred annuity when he should become 62 years of age.

*Id.* at 792. In reaching this conclusion, the court held that "the plaintiff had no vested right in an annuity at age 55 until the event occurred upon which the annuity was to become payable," i.e., the termination of his disability annuity. *Id.* (citing, with approval, *Rafferty v. United States,* 210 F.2d 934, 936 (3d Cir.1954), and the cases cited therein,[29] for the proposition that "where ... there has been compulsory contribution to a retirement or pension fund the employee has no vested right in it until the particular event happens upon which the money or part of it is paid"). Thus, the Court of Claims recognized that retirees could have a vested right in their retirement annuity payments at some specified point in time.

However, the Court of Claims appeared to revisit the conclusion that it reached in *Lawrenson* in *Steinberg v. United States,* 143 Ct.Cl. 1, 163 F.Supp. 590 (1958). In *Steinberg,* the government terminated plaintiff's retirement annuity payments pursuant to a law providing for such a discontinuation in the event the retiree invoked his constitutional right against self-incrimination in testimony concerning his federal employment before a federal grand jury. 163 F.Supp. at 590–91. The five judges of the Court of Claims, in four separate opinions, maintained differing views on the applicability of Supreme Court precedent on the characterization of plaintiff's retirement annuity payments.[30] Judge Laramore, writing the plurality opinion,[31] noted:

The right of a Federal employee to an annuity is not born of a contractual relationship between the Government and the employee, but is more in the nature of a gratuity granted in appreciation for long and faithful service. Congress may in its wisdom modify the payments upward or downward without impairing the obligation of a contract. *Dodge v. Board of Education,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57.... Although an annuity is paid for past, as distinguished from present services, the legal relationship between the parties is in all material respects parallel since a current Federal employee neither has a vested nor a contractual right to continued employment.

*Id.* at 591 (citation omitted). Judge Laramore held that plaintiff, as a retired federal employee, "had no vested or contractual right to his annuity...." *Id.* at 592. However, in a concurring opinion, Chief Judge Jones concluded:

In the matter of a pension or gratuity there is no semblance of a contractual relationship or vested right, and the amount may be reduced from time to time by the Congress. But in the case of retirement, where contributions have been made to a retirement fund, the retirement privilege usually is a part of the inducement for remaining in the Government service. In such instances there is a definite contractual relationship which certainly becomes effective upon retirement. *See Lynch v. United States,* 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.... When such Government employee actually retires the obligation to make the payments becomes fully effective.

*Id.* at 593 (Jones, C.J., concurring) (citation omitted). Judge Whitaker's legal conclusions paralleled those of Chief Judge Jones:

[N]otwithstanding the case of *Dodge v. Board of Education,* 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57, ... and cases in the

---

**29.** *Rafferty* cites the decisions of the Supreme Court in *Dodge* and *Pennie.*

**30.** Interestingly, not one of the four opinions cited the decision of the Court of Claims in *Lawrenson* from the previous year.

**31.** Judge Littleton joined in this opinion.

Courts of Appeals decided since the Dodge case-I think . . . a Federal employee who has retired from the service has a vested right in the retired pay to which he was entitled at the time of his retirement.

When an employee enters the Government service he does so relying upon the statute or regulations fixing the current compensation of the office and the amount to which he will be entitled upon retirement. So long as he remains in the Government service, Congress of course has the right to change the compensation to be paid the holder of the office, as well as the retired pay to which he will be entitled upon retirement. The employee takes the office with knowledge, actual or constructive, of the power of Congress to do this. But, after the employee has rendered the services required of him by the Government, and severs his connection with the Government, he then becomes entitled to the retired pay in effect at the time of his retirement.

This, I think, is a vested right, because it is compensation for services already rendered. Retired pay is not a pension; it is not a gratuity; it is a part of the emoluments of the office. Those emoluments are the payment periodically of the employee's current salary, less deductions for contributions to the retirement fund, etc., and also the retired pay to which the employee is entitled under the law in force at the time of his retirement.

*Id.* at 594 (Whitaker, J., concurring). Judge Whitaker cited the Supreme Court's decision in *Pennie* in support of his conclusion, noting that the Supreme Court implied that once a police officer resigned, was dismissed, or died, any right to payment under California law would vest. *Id.* at 595. Judge Whitaker also distinguished the Supreme Court's decision in *Dodge* by noting that the Supreme Court was construing a state, not a federal, statute. *Id.* at 596. The fifth judge of the Court of Claims, Judge Madden, in dissent, agreed with Judge Laramore that "plaintiff had no vested contractual right to the statutory retired pay." *Id.* at 598 (Madden, J., dissenting). In sum, two judges held that federal retirement payments constituted gratuities (two judges disagreed), one judge

found that the right to retirement payments became contractual at retirement (three judges disagreed), and two judges found that the right to retirement payments vested at retirement (two judges disagreed). The only true consensus opinion found among the four opinions in *Steinberg* was the conclusion that there was no contractual right to a federal retirement annuity. *Id.* at 591, 598.

The Court of Claims had occasion to reexamine its pre-*Steinberg* holdings that retirees might have a vested right in their retirement annuity payments at some specified point in time in *Nordstrom v. United States,* 169 Ct.Cl. 632, 342 F.2d 55 (1965). In *Nordstrom,* plaintiff "had a long career both in the federal civil service and in the military." 342 F.2d at 57. Towards the end of plaintiff's career, Congress enacted certain amendments to the Civil Service Retirement Act, which contained two provisions that had significant effects on plaintiff's potential retirement annuity payments. *Id.* at 57–58. Plaintiff protested the application of the two provisions to his retirement annuity on several grounds. One argument articulated by plaintiff was that he had "a property right, vested against legislative change, in an annuity . . . because, prior to the passage of the new Act, he was already able to retire voluntarily. . . ." *Id.* at 60. Citing *Lawrenson, Prentiss,* and *Rafferty,* the Court of Claims held that "if there can be any such vested rights at all in a federal civilian service annuity, they do not accrue unless the employee is fully entitled to immediate payment under the pre-existing law." *Id.* Thus, the Court of Claims, without citing *Steinberg,* affirmed the possibility that a vested interest might exist in retirement annuity payments upon retirement.

More recently, in *Zucker v. United States,* 758 F.2d 637 (Fed.Cir.1985), the Federal Circuit addressed the claim of retirees that a statute enacted after their retirement, which lowered their cost of living adjustment ("COLA") to their retirement annuities, was unconstitutional. 758 F.2d at 638. The Federal Circuit noted the relevant statutory history:

In 1962 Congress amended the Civil Service Retirement Act to provide an automatic COLA based on the change in the price index.... In 1969, section 8340(b) was amended ... to provide for 1% to be added on top of the COLA ("1% add-on"). In October 1976, Congress amended section 8340(b) by rescinding the 1% add-on and by decreasing the frequency of the COLA calculation.

*Id.* (citation omitted). The retirees filed suit in federal district court alleging that the 1976 amendment "retroactively and unconstitutionally diminished their vested property right in retirement benefits." *Id.* The district court held that the retirees had neither "a constitutionally protected property interest in future COLA benefits" nor a "contractual right to COLA benefits." *Id.* In affirming the district court ruling, the Federal Circuit made clear:

It is well settled that potential retirees have no protected property interest in any particular level of retirement benefits as they have no legitimate claim of entitlement to benefits which are subject to lawful change....

To have a property interest in a benefit protected by procedural due process, a person must have a legitimate claim of entitlement to the benefit.... "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source...."

The key words are "claim of entitlement to the benefit." Although the retirees may have a protected property interest when they are entitled to immediate payment under preexisting law, *i.e.*, the payment of an annuity upon retirement, their entitlement to any post-retirement increases in that annuity stems from the independent source that creates and defines their property interest in same, *i.e.*, the COLA provision of the Civil Service Retirement Act, 5 U.S.C. § 8340.

*Id.* at 638–39 (citations omitted). The Federal Circuit was careful to explain that "[t]his court does not reach the question of the compensatory nature of the basic annuity to

which the retiree became entitled upon retirement. Our ruling is strictly limited to post-retirement COLA benefits." *Id.* at 639. Thus, the Federal Circuit recognized that although potential retirees are not guaranteed a specific level of benefits prior to actual retirement because retirement statutes may be subject to amendment by Congress, actual federal retirees might have a protected property interest in their retirement annuities upon retirement. Further, in dicta, the Federal Circuit noted that there was support in the legislative history and case law for the view that the basic retirement payments (*i.e.*, without a COLA) were "intended as deferred compensation," but declined to go beyond the scope of the issue before the court to determine the precise nature of the annuity. *Id.*

In *Davis*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891, the Supreme Court resolved the question left unanswered by the Federal Circuit. The issue before the Supreme Court was whether Michigan's income tax law, which subjected plaintiff's federal retirement annuity payments to income taxation but exempted from taxation retirement payments paid to retired state employees, discriminated against federal retirees. 489 U.S. at 805–07, 109 S.Ct. 1500. Appellant, a Michigan resident and retired federal employee, argued that Michigan's income tax scheme violated 4 U.S.C. § 111, "which preserves federal employees' immunity from discriminatory state taxation." *Id.* at 807, 109 S.Ct. 1500. In rejecting the State's contention that 4 U.S.C. § 111 "applies only to current employees of the Federal Government, [and] not to retirees," the Supreme Court explained:

Section 111 by its terms applies to "the taxation of pay or *compensation for personal services as an officer or employee* of the United States." (Emphasis added). While retirement pay is not actually disbursed during the time an individual is working for the Government, the amount of benefits to be received in retirement is based and computed upon the individual's salary and years of service. 5 U.S.C. § 8339(a). We have no difficulty concluding that civil service retirement benefits are deferred compensation for past years

of service rendered to the Government. . . . And because these benefits accrue to employees on account of their service to the Government, they fall squarely within the category of compensation for services rendered "as an officer or employee of the United States." Appellant's federal retirement benefits are deferred compensation earned "as" a federal employee, and so are subject to § 111.

*Id.* at 808, 109 S.Ct. 1500 (citations omitted). Although not explicitly stated, the clear implication of the Supreme Court's holding that federal retirement benefits are deferred compensation for services rendered is that federal retirees have vested rights in their retirement annuities. So long as the statute authorizing retirement annuities is in force at the time of a federal employee's retirement, the retiree is entitled to receive the compensation for the work he or she has already performed.

In accordance with the above-cited precedent, plaintiff acquired a vested interest in his retirement annuity upon retirement. However, the court must determine how to characterize the nature of the vested interest acquired by plaintiff. Is the interest strictly contractual in nature, or more akin to a property interest protected by the Due Process Clause of the Fifth Amendment?

**b. Plaintiff's Vested Interest in His Retirement Annuity Is a Property Interest Protected by Procedural Due Process, and Is Not Contractual in Nature**

The relationship between the federal government and its employees is not governed by the general principles of contract law. *Chu*, 773 F.2d at 1229. Nor does the relationship create property rights or interests in future benefits. *See Stearn v. Dept. of Navy*, 280 F.3d 1376, 1384 (Fed.Cir.2002) (noting that "potential retirees [ ] have no protected property interest in a particular level of retirement benefits"); *Zucker*, 758 F.2d at 638 ("[P]otential retirees have no protected property interest in any particular level of retirement benefits. . . ."); *Am. Postal Workers Union v. U.S. Postal Serv.*, 707 F.2d 548, 554 (D.C.Cir.1983) ("[A] reasonable expectation does not constitute a property interest. . . . *Potential* retirees have no protected proper-

ty interest in any particular level of retirement benefits."). Thus, prior to an employee's retirement, any statutory "promises" made to an employee concerning potential retirement benefits can be revoked by the government at any time. *Zucker*, 758 F.2d at 638. However, upon an employee's retirement, the employment relationship ceases and the employee acquires a vested right to whatever benefits were "promised" by statute, with whatever conditions the statute attached to those benefits, at the time of the employee's retirement. *See Am. Postal Workers Union*, 707 F.2d at 554 ("A protected interest in retirement benefits arises only at the point when the federal employee actually retires. . . .").

Given the above characterization, it is tempting to treat vested rights in a federal retirement annuity that originally derive from statute as contractual in nature. However, there is a dearth of legal support for such a proposition. In fact, in the one case that touches upon the issue, *Steinberg*, three of the five judges of the Court of Claims agreed that a retiree had "no vested or contractual right to his annuity. . . ." 163 F.Supp. at 592, 598. Thus, there is no support for the proposition that plaintiff's vested rights in his retirement annuity are contractual in nature. Rather, the court finds that it is more appropriate to treat plaintiff's vested rights as a property interest protected by procedural due process. *See Am. Postal Workers Union*, 707 F.2d at 554 ("A retiree who meets these [statutory] eligibility requirements acquires an interest protected by the due process clause in benefits at the level provided by the law in effect at the time he or she becomes eligible.").

The Fifth Amendment prohibits the federal government from depriving a person of property without due process of law. U.S. Const. amend. V. "[A] monetary entitlement under a compensation statute" is "considered to be [a] government conferred benefit [ ], safeguarded exclusively by procedural due process." *Adams v. United States*, 391 F.3d 1212, 1220 & n. 4 (Fed.Cir.2004); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that procedural due process "is a safeguard

of interests that a person has already acquired in specific benefits"). Plaintiff's vested rights in his retirement annuity fit squarely within this framework. Thus, construing the complaint broadly, the court treats plaintiff's "breach of contract" claim as a Fifth Amendment due process claim.

### c. The Court Lacks Jurisdiction Over Plaintiff's Due Process Claims

■ Thus, the question becomes whether the court can exercise jurisdiction over a Fifth Amendment due process claim. It cannot. Binding precedent uniformly holds that the Court of Federal Claims does "not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause. This is so because the due process clause does not obligate the government to pay money damages." *Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir.1995); *see also Crocker*, 125 F.3d at 1476 ("The Court of Federal Claims ... does not have jurisdiction to hear ... due process or seizure claims under the Fifth Amendment to the United States Constitution."). Moreover, Congress established a comprehensive administrative and judicial framework for adjudicating CSRS benefit claims that precludes this court's exercise of jurisdiction. Claimants must first exhaust their administrative remedies before the OPM, 5 U.S.C. §§ 8347(a)-(b), from which appeals may be taken to the Merit Systems Protection Board, *id.* § 8347(d)(1), and if further review is sought, to the Federal Circuit, *id.* § 7703(b)(1). Thus, plaintiff's "breach of contract" claim must be dismissed for lack of jurisdiction.

### 5. The Court Lacks Jurisdiction Over Plaintiff's Breach of Fiduciary Duty and Conversion Claims

■ Plaintiff next argues that the OPM breached its fiduciary duty by "wrongfully" converting his retirement annuity payments to the possession of the government. Compl. ¶¶ 1, 15, 33, 61. Plaintiff's claims for breach of fiduciary duty and conversion sound in tort. Thus, the court lacks jurisdiction to consider the merits of those claims. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdic-

tion to render judgment upon any claim against the United States ... for liquidated or unliquidated damages in cases not sounding in tort.").

### 6. The Court Lacks Jurisdiction Over Plaintiff's Claim for a Fifth Amendment Taking

■ Next, construing the complaint broadly, the court finds that plaintiff may be asserting a Fifth Amendment takings claim. *See* Compl. ¶¶ 23, 59; *see also id.* ¶¶ A, 1, 48(2), 54–56, 65 (reflecting plaintiff's treatment of his retirement annuity payments as property). The Fifth Amendment prohibits the government from taking private property for public use without paying just compensation. U.S. Const. amend. V. The Court of Federal Claims possesses jurisdiction to entertain Fifth Amendment takings claims against the United States. *See Morris v. United States*, 392 F.3d 1372, 1375 (Fed.Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). However, Tucker Act jurisdiction over Fifth Amendment takings claims is premised on the requirement that the government action was legitimate. *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 126–27 & n. 16, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir. 1993). In this case, plaintiff alleges that the IRS unlawfully assessed income tax on his retirement annuity payments and then unlawfully levied those same payments, and that the OPM unlawfully executed the levy. Because plaintiff disputes the lawfulness of the actions of the IRS and the OPM, this court lacks jurisdiction to consider his Fifth Amendment takings claim. Moreover, to the extent that plaintiff's complaint can be construed as asserting that the imposition of taxes and penalties constitute a taking, that claim must be rejected. *See Branch v. United States*, 69 F.3d 1571, 1576–77 (Fed.Cir. 1995) (holding that taxes are not takings under the Fifth Amendment).

### 7. The Court Lacks Jurisdiction Over Claims Under the Freedom of Information Act

Plaintiff argues that prior to collecting a particular debt, the OPM must "produce an authority to collect" the debt and "verify the debt." Compl. ¶ 25. Plaintiff contends that the OPM's burden of proof with respect to these requirements is found at 5 U.S.C. § 552(a)(4)(B). *Id.* The section of the United States Code cited by plaintiff is part of the FOIA, 5 U.S.C. § 552 (2000 & Supp. II 2003). The FOIA lacks any money-mandating provisions. Furthermore, the FOIA expressly provides for jurisdiction in "the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia...." 5 U.S.C. § 552(a)(4)(B). As stated previously, the Court of Federal Claims is not a district court. *Ledford,* 297 F.3d at 1382; *Alford,* 3 Cl.Ct. at 230. Thus, this court lacks jurisdiction to consider the merits of any FOIA claim. *See also Bernard v. United States,* 59 Fed.Cl. 497, 503 (2004) (holding the same).

### 8. The Court Lacks Jurisdiction to Award Declaratory and Injunctive Relief

In addition to monetary remedies, plaintiff requests declaratory and injunctive relief. Compl. ¶¶ 16, 61, 70. However, except in limited situations not relevant in this case, *see* 28 U.S.C. §§ 1491(a)(2), (b)(2), the Court of Federal Claims lacks jurisdiction to award declaratory or injunctive relief. *Bowen v. Massachusetts,* 487 U.S. 879, 905 & n. 40, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Furthermore, in most cases concerning federal taxes, including the case presently before the court, all federal courts are prohibited from awarding declaratory or injunctive relief. *See* 26 U.S.C. § 7421(a) ("Except as provided ..., no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person...."); 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, except with respect to Federal taxes

..., any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *Ledford,* 297 F.3d at 1381 ("[N]o statutory authority exists that would grant the Court of Federal Claims the power to enjoin an IRS collection proceeding."). Thus, the court lacks jurisdiction to award plaintiff's requested declaratory and injunctive relief.

### 9. Conclusion: Plaintiff's Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction

Plaintiff must contend with the following truisms. He is required to pay income tax on his retirement annuity payments pursuant to 26 U.S.C. § 61(a). The IRS has the authority to impose a levy to recover unpaid taxes pursuant to 26 U.S.C. § 6331. The OPM has the authority to execute an IRS levy pursuant to 5 C.F.R. §§ 831.1801–.1808. And, to his detriment, plaintiff has not pursued the process required by the IRC to challenge the levy with the IRS.

For the purposes of maintaining his complaint in this court, plaintiff has not cited any money-mandating constitutional provisions or statutes that provide for jurisdiction in this court. Accordingly, the court grants defendant's motion to dismiss pursuant to RCFC 12(b)(1).

The court's dismissal of plaintiff's complaint pursuant to RCFC 12(b)(1) renders plaintiff's remaining motions moot. However, to aid plaintiff's understanding, the court addresses the merits of each motion in turn.

### IV. PLAINTIFF'S MOTION FOR JUDICIAL NOTICE OF PRIOR ADMISSIONS BY DEFENDANT

On December 26, 2006, plaintiff filed his first motion for judicial notice. In this motion, plaintiff contends that the government's failure to answer his complaint in a prior lawsuit resulted in the government's admission of the facts alleged in his complaint in that lawsuit.[32] Plaintiff requests that the

---

**32.** The prior lawsuit was *McNeil v. Doe,* docket number 05–CV–0579, filed in the United States

court take judicial notice of the government's alleged admissions pursuant to FRE 201(d).

In the prior lawsuit referred to by plaintiff, the government filed a motion to dismiss in lieu of an answer. *See* Docket of *McNeil v. Doe*, No. 05–CV–0579 (filed Oct. 5, 2005). As noted above, when a defendant files a motion to dismiss, the court must assume that plaintiff's allegations in the complaint are true. *Henke*, 60 F.3d at 797. Contrary to plaintiff's contention, Mot. Judicial Notice ¶ 3, however, the filing of a motion to dismiss is not the same as an admission by defendant that plaintiff's allegations in the complaint are true. *See Wickstrom v. Ebert*, 101 F.R.D. 26, 33 (E.D.Wis.1984) (holding that plaintiffs were not entitled to judgment merely because defendant chose to respond to the complaint with a motion to dismiss rather than an answer and rejecting plaintiffs' "bald assertion that defendants' failure to answer constitutes 'an admission that allegations [in the complaint] are true'"); *see also Norman v. Mo. Pac. R.R.*, 414 F.2d 73, 78 (8th Cir.1969) ("A motion to dismiss is not a substitute for trial on the merits and disputed issues of fact are not to be resolved in considering the motion."). On the contrary, if the court denied plaintiff's motion, the government would then file its answer to the complaint in which it would be free to deny any or all of plaintiff's allegations. Plaintiff then would be required to proffer evidence in support of his allegations. Accordingly, even if plaintiff's motion for judicial notice was not moot, the court would deny it.

## V. PLAINTIFF'S MOTION FOR JUDICIAL NOTICE

Plaintiff filed his second motion for judicial notice on March 7, 2007. This motion seeks the court's recognition of a variety of statutes and regulations, as well as the court's acknowledgment of their applicability to this case. Pl.'s Resp. ¶¶ 10–14. More specifically, plaintiff identifies those sections of the 1939 IRC that are now found in 26 U.S.C. § 6331, traces those sections of the 1939 IRC

to the original legislation enacted by Congress, and argues that those original statutes do not authorize the IRS levy on his retirement annuity. Plaintiff's logic is flawed. The 1939 IRC is not the sole source of the provisions found in 26 U.S.C. § 6331. Other Acts of Congress have added to or amended this section. *See, e.g.*, Taxpayer Relief Act of 1997, Pub.L. No. 105–34, §§ 1024–1025, 111 Stat. 788, 923–24 (amending 26 U.S.C. § 6331 to allow for continuous levies by the IRS). Thus, even if plaintiff's second motion for judicial notice was not moot, the court would deny it.[33]

## VI. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In addition to the second motion for judicial notice and the motion to strike, plaintiff moved for the entry of summary judgment on March 7, 2007. Plaintiff contends:

> The record made here contains verified statements by Petitioner that OPM converted private property to another. Defense has entered documents provided by OPM confessing the allegations. The record made here is devoid of a single exculpatory statement or verified document. The United States must be seen here as having defaulted upon its duty to reply. A default-judgment is an appropriate remedy when a party defendant has failed to defend against a claim brought by another.

Pl.'s Resp. ¶ 44. Summary judgment is not typically entered unless the parties have been afforded the opportunity to conduct discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (noting that summary judgment is inappropriate without allowing for an "adequate time for discovery"). More inappropriately, plaintiff has moved for a default judgment based upon defendant's alleged failure to respond to plaintiff's complaint. Pl.'s Resp. ¶ 44. Plaintiff's allegation defies reality. Defendant did respond to plaintiff's complaint. Indeed, defendant asserted the ap-

---

District Court for the Northern District of Oklahoma.

**33.** Further, to the extent that plaintiff contends that title 27 of the United States Code and title

27 of the CFR, both which concern alcohol, tobacco, and firearms, are applicable to the case at bar, *see* Pl.'s Resp. ¶¶ 10, 13, the court finds that they have no relevance.

propriate jurisdictional defenses. Not only is a default judgment unwarranted in this case, but such relief is granted only in rare circumstances. *See, e.g., Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 795 (Fed.Cir.1993) (stating the "well-established principle [ ] that a trial on the merits is favored over default judgment"); *Westec Co. v. United States*, 32 Fed.Cl. 576, 578 (1995) ("Rule [ ] 55 ... should be liberally interpreted in favor of judgment on the merits."). Pursuant to the RCFC, "[n]o judgment by default shall be entered unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." RCFC 55(b). Under the facts before the court, RCFC 55(b) has no application. Indeed, it would be ironic to grant such relief here given that the purpose of RCFC 55(b) is to protect the United States Treasury and United States taxpayers from frivolous and unjustified claims of the sort alleged by plaintiff. In any event, the court cannot enter judgment for plaintiff where the court lacks jurisdiction over plaintiff's claims. Accordingly, plaintiff's motion for summary judgment is moot.

## VII. PLAINTIFF'S EMERGENCY MOTION FOR JUDICIAL INTERVENTION

Having received another, allegedly duplicitous, Notice of Levy dated February 22, 2007, plaintiff filed an emergency motion requesting that the court take action barring the OPM "from acting further on IRS claims made upon future annuity payments ... without written consent from this Court." Emergency Mot. ¶ 6. As noted above, the proper procedure for plaintiff to contest the imposition of a levy by the IRS is to contact the IRS directly, at the telephone number provided on the Notice of Levy. During the April 11, 2007 status conference convened to discuss the emergency motion, plaintiff rejected any offer of assistance from the court and defense counsel to facilitate a meeting between plaintiff and the IRS. The court lacks jurisdiction over plaintiff's tax-related

claims until he has taken the appropriate administrative actions. Furthermore, plaintiff's emergency motion seeks injunctive relief, which the court cannot award. For this reason, assuming that plaintiff's emergency motion was not moot, the court would deny it.

## VIII. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss pursuant to RCFC 12(b)(1) and **DISMISSES** plaintiff's complaint **WITHOUT PREJUDICE.** The court **DENIES** plaintiff's motion to strike. The court **DENIES AS MOOT** plaintiff's motion for judicial notice, second motion for judicial notice, motion for summary judgment, and emergency motion.

COSTS TO DEFENDANT.[34]

**IT IS SO ORDERED.**

---

**34.** Although plaintiff seeks an award of legal costs, he cannot recover them because he is not a prevailing party. *See* RCFC 54(d) ("Costs other than attorneys' fees may be awarded to the pre-

vailing party to the extent permitted by law."). Moreover, the court awards costs to defendant due to the frivolous nature of plaintiff's complaint.